IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

EDUARDO LEE HOOVER, SR.,

       Plaintiff,

       v.

TYLER EVANS, *et al.*,

       Defendants.

2:25-CV-00440-CCW

## OPINION

Before the Court are Motions to Dismiss by Defendants Officer Tyler Evans, Chief Matthew Tharp, and the Board of Supervisors of Mount Pleasant Township: George Rice, Gray Farner, and Shane Maga (collectively, "Mount Pleasant Defendants"), ECF No. 22, and by Officer Michael Pasquale, Chief Bernie Larue, and the Board of Supervisors of Smith Township: Robert Cassidy, Timothy Green, Marie Ferguson (collectively, "Smith Defendants"), ECF No. 24. For the reasons set forth below, the Court will grant the Mount Pleasant Defendants' Motion and will grant in part and deny in part the Smith Defendants' Motion.

## I.    Background

This case stems from the officer-involved shooting and death of Eduardo Lee Hoover, Jr. on the evening of April 2, 2023. ECF Nos. 16 ¶ 18, 23 at 2–3. The Plaintiff, Eduardo Lee Hoover, Sr., is the father of the decedent, and brings this action as the administrator of the estate of Mr. Hoover, Jr. ECF No. 16 ¶ 1. Defendants Officer Tyler Evans and Chief Matthew Sharp are employed by the Mount Pleasant Township Police Department in Washington County, Pennsylvania. *Id.* ¶¶ 4–6. Defendants Officer Michael Pasquale and Chief Bernie Larue are employed by the Smith Township Police Department in Washington County, Pennsylvania. *Id.*

¶¶ 8–11.  The remaining Defendants make up the Boards of Supervisors for Mount Pleasant Township and Smith Township, respectively, at the time of the incident at issue.  *Id.* ¶¶ 7, 12.

Mr. Hoover, Sr. has voluntarily withdrawn several claims, [1] and the remaining claims in the operative Amended Complaint are:  a § 1983 excessive-force claim under the Fourth Amendment against Officer Evans in his individual capacity (Count I); a § 1983 claim against Officer Pasquale in his individual capacity for unlawful deadly force under the Fourth Amendment (Count II) and state-created danger under the Fourteenth Amendment (Count III);  § 1983 *Monell* municipal liability claims against Mount Pleasant Board of Supervisors, Chief Tharp, the Smith Board of Supervisors, and Chief Larue,[2] all in their official capacities, based on alleged policy and training failures (Counts IV and V);  and state-law survival and wrongful death claims against all Defendants (Counts VI and VII).[3]  *See* ECF No. 16.

The following factual allegations are accepted as true.  On April 2, 2023, Mr. Hoover, Jr. left his home in Burgettstown Borough driving a vehicle.  *Id.* ¶ 18.  A neighbor then called 911 to report Mr. Hoover, Jr. for driving recklessly.  *Id.* ¶ 20.  Officer Evans and Officer Pasquale responded to a 911 dispatch and began to follow Mr. Hoover, Jr. on State Route 18 South, a two-

---

[1] In his briefs in opposition to the Motions to Dismiss, Mr. Hoover, Sr. has expressly withdrawn his claims against Officers Evans and Pasquale in their official capacities (portions of Counts I–III), and against Chiefs Tharp and Larue in their in individual capacities (portions of Counts IV and V).  *See* ECF No. 32 at 2;  33 at 4, 10.  Accordingly, the Court will dismiss those claims as withdrawn.

[2] The parties dispute whether the *Monell* counts in the Amended Complaint name Mount Pleasant Township and Smith Township as Defendants.  *See* ECF No. 25 at 15–17;  ECF No. 32 ¶ 2.  Mr. Hoover, Sr. asserts that the Townships themselves are not named as Defendants in this case.  ECF No. 32 ¶ 2.  The Smith Defendants contend that Smith Township is individually named in the headings of Counts IV and V within the Amended Complaint and, accordingly, the claims against Chief Larue and the Smith Board of Supervisors are redundant of *Monell* claims against Smith Township.  ECF No. 25 at 15–17.  The caption of the Amended Complaint does not include the Townships themselves as Defendants.  Nor does the "Parties" section of the Amended Complaint identify the Townships themselves as Defendants.  Mr. Hoover, Sr. neither requested a summons for nor served either Township.  However, because the headings of Counts IV and V do name the Townships, the Amended Complaint creates some ambiguity as drafted.  Having reviewed the case caption, the body of the Amended Complaint, and in light of Plaintiff's representations regarding the parties it intended to sue, the Court concludes that the Townships themselves are not named Defendants in this case.

[3] The Court has jurisdiction over the § 1983 claims, which raise federal questions, under 28 U.S.C. § 1331 and may exercise supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367.

lane road. *Id.* ¶ 21. A chase ensued, joined by several other officers. *Id.* ¶ 25. During the chase, Mr. Hoover, Jr.'s speed at times reached 80 miles per hour. *Id.* ¶ 28. His blood alcohol content ("BAC") was later determined to be .279, more than three times the legal limit for driving in Pennsylvania. *Id.* The chase lasted approximately 17 minutes. *Id.* ¶ 29. During the chase, Mr. Hoover, Jr. occasionally slowed to accommodate other vehicles. *Id.* ¶ 30. In the 600 block of Jefferson Avenue in the city of Washington, PA, Officer Pasquale maneuvered his vehicle to block Mr. Hoover, Jr.'s truck. *Id.* ¶¶ 30–31. Mr. Hoover, Jr. came to a complete stop, and Officer Evans moved his vehicle behind Mr. Hoover, Jr., boxing his truck in. *Id.* ¶ 32–33. Officer Pasquale exited his vehicle and pointed his firearm at Mr. Hoover, Jr., who was unarmed. *Id.* ¶ 34. Mr. Hoover, Jr. placed his vehicle in reverse, striking Officer Evans' vehicle. *Id.* ¶ 36. At that time, Officer Evans was seated inside his vehicle. *Id.* ¶ 41. Either before or after Mr. Hoover, Jr. struck Officer Evans' vehicle, Officer Pasquale fired two shots to "disable" Mr. Hoover, Jr.'s vehicle. *Id.* ¶ 35. Panicked, Mr. Hoover, Jr. pulled his vehicle forward, striking a telephone pole. *Id.* ¶ 43. He then turned his steering wheel to the left and again placed the car in reverse, accelerating slowly in an attempt to escape the officers. *Id.* ¶ 44. Officer Evans, still seated in his vehicle behind Mr. Hoover, Jr.'s vehicle, exited his vehicle and fired two shots to the head and neck of Mr. Hoover, Jr., killing him. *Id.* ¶ 46. Simultaneously, Officer Pasquale fired two additional shots at Mr. Hoover, Jr. *Id.* ¶ 47. Mr. Hoover, Jr. was pronounced dead at the scene. *Id.* ¶ 48.

The Smith Defendants now seek to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the basis that that Plaintiff fails to state a claim. ECF No. 24. The Mount Pleasant Defendants seek partial dismissal of the claims against Chief Tharp and the Mount Pleasant Board of Supervisors in their official capacities. ECF No. 22.

**II.      Legal Standard**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a claim.  In reviewing a motion to dismiss, the court accepts as true a complaint's factual allegations and views them in the light most favorable to the plaintiff.  *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).  Although a complaint need not contain detailed factual allegations to survive a motion to dismiss, it cannot rest on mere labels and conclusions.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  That is, "a formulaic recitation of the elements of a cause of action will not do[.]"  *Id.*  Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and be "sufficient . . . to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556).

The United States Court of Appeals for the Third Circuit has established a three-step process for district courts to follow in analyzing a Rule 12(b)(6) motion:  First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."  *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)).  That said, under Rule 8's notice pleading standard, even after the Supreme Court's decisions in *Twombly* and *Iqbal*, a plaintiff need only "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her

4

claims." *Connolly v. Lane Constr. Corp.*, 809 F.3d 780, 788–89 (3d Cir. 2016) (finding that "at least for purposes of pleading sufficiency, a complaint need not establish a prima facie case in order to survive a motion to dismiss.").

III.   **Analysis**

A.   **Mr. Hoover, Sr. Has Sufficiently Stated Claims of Excessive and/or Unlawful Deadly Force Under the 4th Amendment (Counts I and II)**

Mr. Hoover, Sr. asserts excessive force and unlawful deadly force claims against Officers Evans and Pasquale in their individual capacities.[4]   To state an excessive force claim under 42 U.S.C. § 1983, "a complainant must, among other things, allege that the force used was unreasonable." *Rodriguez v. Trenton Police Dep't*, 828 F. App'x 851, 852 (3d Cir. 2020) (citing *Brower v. Inyo Cnty.*, 489 U.S. 593, 599 (1989)).  And "to determine whether an officer's use of force was unreasonable, a court must consider all of the relevant facts and circumstances leading up to the time that the officers allegedly used excessive force." *Id.* (cleaned up).  Thus, to evaluate an excessive force claim, the Court looks at "whether a constitutional violation has occurred using the Fourth Amendment's objective reasonableness test." *Santini v. Fuentes*, 795 F.3d 410, 417 (3d Cir. 2015) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)).  In conducting this assessment, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Cty. of L.A. v. Mendez*, 581 U.S. 420, 428 (2017) (quoting *Graham*, 490 U.S. at 396); *see also Saucier v. Katz*, 533 U. S. 194, 207 (2001) ("Excessive force claims . . . are evaluated for objective reasonableness based upon the information the officers had when the conduct occurred.").

---

[4] The Court analyzes the "unlawful deadly force" claim under the same Fourth Amendment excessive force framework. *See Smith v. Grandsen*, No. 08-4517 JEI, 2011 WL 5080320, at *2 (D.N.J. Oct. 25, 2011) (citing *Tennessee v. Garner*, 471 U.S. 1, 7 (1985) ("[T]here can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment.").

The Fourth Amendment excessive force "inquiry is highly individualized and fact specific[.]" *Santini*, 795 F.3d at 417.  There are several factors that the Third Circuit has said district courts may consider when evaluating the reasonableness of a particular use of force, including:

> (1) the severity of the crime at issue, (2) whether the suspect poses an imminent threat to the safety of the police or others in the vicinity, and (3) whether the suspect attempts to resist arrest or flee the scene . . . [and] [4] the possibility that the persons subject to the police action are themselves violent or dangerous, [5] the duration of the action, [6] whether the action takes place in the context of effecting an arrest, [7] the possibility that the suspect may be armed, and [8] the number of persons with whom the police officers must contend at one time.

*Id.* (citing *Graham*, 490 U.S. at 396 (factors (1) through (3)) and quoting *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997) (abrogated on other grounds) (factors [4] through [8]) (numbering added)).  Finally, this "inquiry is dispositive:  When an officer carries out a seizure that is reasonable, taking into account all relevant circumstances, there is no valid excessive force claim." *Mendez*, 581 U.S. at 428.

Here, accepting the factual allegations in the Amended Complaint as true and viewing them in the light most favorable to Plaintiff, the Court cannot conclude at this stage that the actions of the officers were objectively reasonable.  *See Rodriguez*, 828 F. App'x at 852.  The Amended Complaint asserts that Mr. Hoover, Jr. led officers in a seventeen-minute chase with a BAC of .279 and speeds reaching 80 miles per hour.  ECF No. 16 ¶¶ 25–29.  At the conclusion of the chase, Mr. Hoover, Jr. came to a complete stop, and his vehicle was boxed in by the officers.  *Id.* ¶¶ 32–33.  The Complaint further alleges that Officer Pasquale fired two shots at Mr. Hoover, Jr.'s vehicle to "disable" it, and that Mr. Hoover, Jr., panicked by the gun fire, pulled forward into a telephone pole and then slowly attempted to maneuver backward and forward again to escape the officers.  *Id.* ¶¶ 43–45.  The Amended Complaint contends that the manner and speed of Mr. Hoover, Jr.'s movements should suggest that Mr. Hoover, Jr. did not

6

intend to strike any officer or police cruiser. *Id.* The Amended Complaint further alleges that Mr. Hoover, Jr. was unarmed, made no threats of violence, and gave no indication that he possessed a weapon. *Id.* ¶ 34. Viewing these facts in the light most favorable to Plaintiff, the Court concludes that the record as currently developed is unclear as to whether Mr. Hoover, Jr. reasonably represented an imminent threat to the officers or others in the vicinity at the time the officers discharged their weapons, ultimately striking and killing Mr. Hoover, Jr. *Id.* ¶ 34; *see Santini*, 795 F.3d at 417.

Defendants correctly assert that the Amended Complaint pleads facts that support dismissal, such as Mr. Hoover, Jr.'s high speeds, his BAC, and the collisions that occurred at the conclusion of the chase, including with Officer Evans' vehicle. ECF No. 25 at 6–7. But these facts are insufficient to resolve the excessive force claims in Defendants' favor at this early stage. The Amended Complaint suggests that the danger presented by the chase was no longer present at the time Mr. Hoover Jr. stopped his vehicle, boxed in by the officers and unarmed. *See generally* ECF No. 16. These allegations plausibly allege that the officers' use of force was objectively unreasonable under the Fourth Amendment in light of the totality of the circumstances. *See Jefferson v. Lias*, 21 F.4th 74, 78–80 (3d Cir. 2021) (reversing the district court's grant of summary judgment and holding that a reasonable jury could find that the use of deadly force against a fleeing motorist unconstitutional where a reasonable officer may not have believed the driver posed an immediate threat); *see also Abraham v. Raso,* 183 F.3d 279, 290 (3d Cir. 1999) (reversing the district court and holding that the jury should have the opportunity to make factual determinations regarding an officer's decision to employ deadly force against a fleeing suspect, stating "since we lack a clearly defined rule for declaring when conduct is unreasonable in a specific context, we rely on the consensus required by a jury decision to help

ensure that the ultimate legal judgment of 'reasonableness' is itself reasonable and widely shared."). Thus, Plaintiff has stated a claim for excessive force.

The Smith Defendants argue in the alternative that Officer Pasquale is entitled to qualified immunity. ECF No. 25 at 7–10. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). At the motion to dismiss stage, government officials are entitled to qualified immunity unless (1) the facts, taken in the light most favorable to the plaintiff, show a constitutional violation, and (2) the alleged constitutional right was clearly established at the time of the violation. *Thomas v. City of Harrisburg*, 88 F.4th 275, 281 (3d Cir. 2023). Courts may address these two prongs in any order. *Lozano v. New Jersey*, 9 F.4th 239, 245 (3d Cir. 2021). Courts have interpreted "clearly established" to mean that officers "are on notice their conduct is unlawful" prior to bringing a lawsuit against them. *Thomas,* 88 F.4th at 281 (citing *Saucier*, 533 U.S. at 202). A right is clearly established where it "is sufficiently clear that a reasonable official would understand that what he is doing violates that [constitutional] right." *Id.* at 284 (citing *Saucier*, 533 U.S. at 231). Moreover, officers bear the burden of establishing their entitlement to qualified immunity at the motion to dismiss stage. *Deivert v. Zartman*, No. 4:23-CV-01964, 2025 WL 83747, at *4 (M.D. Pa. Jan. 13, 2025) (citing *Mitros v. Cooke*, 170 F. Supp. 2d 504, 507 (E.D. Pa. 2001)); *see also Reedy v. Evanson*, 615 F.3d 197, 223 (3d Cir. 2010) ("The burden of establishing entitlement to qualified immunity is on [the defendant].").

The Third Circuit has acknowledged that "the imperative to decide qualified immunity issues early in the litigation is in tension with the reality that factual disputes often need to be

resolved before determining whether the defendant's conduct violated a clearly established right." *Curley v. Klem*, 298 F.3d 271, 278 (3d Cir. 2022). Here, the Court finds that the factual record is insufficiently developed to determine whether Officers Pasquale and Evans are entitled to qualified immunity. There are insufficient facts regarding the initiation of the pursuit, its conclusion, and the specific events that led to the discharge of the officers' weapons for the Court to determine what the officers did or did not know at the time they acted. Thus, deciding whether the officers are entitled to qualified immunity at this time would be premature. *Vanderhoff v. City of Nanticoke*, No. 3:18-cv-1071, 2018 WL 4565673, at \*9 (M.D. Pa. Sep. 24, 2018) (denying motion to dismiss based on qualified immunity because "[a]t this stage of the proceedings, it does not appear that qualified immunity exists as a matter of law on the face of the Second Amended Complaint"); *Newland v. Reehorst*, 328 F. App'x 788, 791 n.3 (3d Cir. 2009) ("[I]t is generally unwise to venture into a qualified immunity analysis at the pleadings stage as it is necessary to develop the factual record in the vast majority of cases."); *Janwoski v. City of N. Wildwood*, 259 F. Supp. 3d 113, 122–25 (D.N.J. 2017) ("[T]he totality of the circumstances known to the officer must be established on the face of the complaint in order for this Court to carry out its qualified immunity analysis."). For the foregoing reasons, the Court concludes that Mr. Hoover, Sr. has pled facts sufficient to state claims of excessive force against Officers Evans and Pasquale in their individual capacities in Counts I and II.

### B.   The Amended Complaint Fails to Sufficiently Allege *Monell* Liability (Counts IV and V)

In the Amended Complaint, Mr. Hoover, Sr. alleges *Monell* claims against the Chiefs of Police and Boards of Supervisors for Mount Pleasant Township and Smith Township, arguing that these Defendants failed to have policies in place which "adequately addressed the reasonableness of shooting at fleeing motor vehicles[,]" and failed to adequately train Officers

9

Pasquale and Evans.  ECF No. 16 at 15–17.  As a threshold matter, the Court must address whether the Defendants are properly named for the purpose of bringing *Monell* claims.  Mr. Hoover, Sr. does not name either Township in the case caption and, in briefing, affirmatively states that he is not bringing suit against the Townships themselves.  *See supra* note 2.  That position is in conflict with Mr. Hoover, Sr.'s apparent attempt to bring *Monell* claims against municipal actors in their official capacities.  "A suit against a governmental official in his or her official capacity is treated as a suit against the governmental entity itself."  *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 580 (3d Cir. 2004).  Thus, to the extent Mr. Hoover, Sr. asserts official-capacity claims against the Townships' Chiefs of Police, those claims are properly understood as claims against the corresponding municipalities, Smith Township and Mount Pleasant Township, and are not properly brought against the Chiefs.  As explained below, however, these *Monell* claims fail on their merits.  In addition to the Chiefs, Mr. Hoover, Sr. names the Townships' Boards of Supervisors as Defendants in the *Monell* claims.  It is not clear to the Court that the Boards of Supervisors are proper *Monell* Defendants where, as here, Mr. Hoover expressly disclaims any suit against the Townships themselves.  *See* ECF No. 23 at 7 n.3 (Mount Pleasant Defendants arguing that the Board of Supervisors was not properly named as a party).  In any event, even assuming for the sake of argument that the Boards are proper *Monell* defendants, those claims also fail on the merits.

The *Monell* claims directed at the Mount Pleasant Defendants and the Smith Defendants are factually analogous, and the Court will address them together.  The Mount Pleasant Defendants argue that a single incident alleged in a complaint is insufficient to show a municipal policy, nor is it sufficient to demonstrate a failure to train, or that failure to train caused the alleged injuries.  ECF No. 15 at 13–15.  Mr. Hoover, Sr. responds that "[e]ven if the Plaintiff's

'failure to train' *Monell* theory is contains [sic] insufficient factual allegations[,]" his *Monell* claims should survive under the policy theory. ECF No. 33 at 12. Accordingly, the Court will construe Mr. Hoover, Sr.'s claim as a custom or policy species of *Monell* claim and address whether the Amended Complaint states a custom or policy claim against the named Defendants.[5]

"[A] municipality can be held liable [for constitutional violations] when the 'execution of a government's policy or custom . . . inflicts the injury.'" *Bhatnagar v. Meyer*, No. 22-2848, 2023 WL 5378834, at *3 (3d Cir. Aug. 22, 2023) (citing *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 694 (1978)). To sufficiently state a *Monell* claim, a plaintiff must identify "the constitutional right at issue, identify the policy or custom at issue, identify the policymaker, demonstrate deliberate indifference or evidence of knowledge and acquiescence by the policymaker[,] and demonstrate causation.'" *Long v. City of Phila.*, No. 15-00202, 2016 WL 192605, at *3 (E.D. Pa. Jan. 15, 2016) (quoting *Glass v. City of Phila.*, 455 F. Supp. 2d 302, 342 (E.D. Pa. 2006)). *Monell* claims, therefore, are based on an underlying constitutional violation. To satisfy the pleading standard, a plaintiff must "specify what exactly that custom or policy was" that caused the constitutional violation. *Rajab v. Westmoreland Cnty.*, No. 22-774, 2023 WL 11968042, at *4 (W.D. Pa. Jan. 23, 2023) (Dodge, M.J.) (quoting *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2019)).

The Court concludes that Mr. Hoover, Sr. has failed to identify such a custom or policy as his Amended Complaint only conclusorily states that the Defendants "failed to have policies

---

[5] Plaintiffs' Responses in Opposition to the Motions, ECF Nos. 32 and 33, focus almost exclusively on a custom or policy theory. However, to the extent Mr. Hoover, Sr. asserts a *Monell* claim based on a failure-to-train, other than a custom or policy, he has not plausibly alleged a "pattern of similar constitutional violations by untrained employees" in order to "demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62–63 (2011). Mr. Hoover, Sr. contends that, with respect to the Mount Pleasant Defendants, the Amended Complaint identifies three instances of police chases ending in fatalities in the past three years. *See* ECF No. 85. However, while Mr. Hoover, Sr. states that fatalities related to police chases occurred, he fails to allege that those incidents involved constitutional violations or untrained employees. *Id.*; *Connick*, 563 U.S. at 62–63. Similarly, he does not allege specific facts in those incidents, nor does he allege how the circumstances of those incidents are similar to those in this case. Accordingly, Mr. Hoover, Sr.'s failure-to-train claims fail.

in place" which addressed situations like the car chase at issue in this case. ECF No. 16 ¶¶ 79, 88. He provides no further details identifying an unconstitutional custom or policy or how it led to his injury; instead, his Amended Complaint "contains formulaic recitations of the legal standards under *Monell* . . . and [is] predicated upon sweeping legal conclusions" which are insufficient to state a claim. *Baker v. City of Pittsburgh*, No. 24-461, 2025 WL 33637, at \*10 (W.D. Pa. Jan. 6, 2025) (Stickman, J.). As a basis for his *Monell* claims, Mr. Hoover, Sr. argues that Defendants failed to comply with Pennsylvania state law. ECF No. 16 ¶¶ 78, 87 (citing 75 Pa. Cons. Stat. § 6342 ("Each police department shall develop and implement a written emergency vehicle response policy governing the procedures under which a police officer should initiate, continue and terminate a motor vehicle pursuit.")). But even assuming, *arguendo*, that the Townships' policies were deficient under Pennsylvania law, this alone does not constitute a constitutional violation and is therefore an insufficient basis for a *Monell* claim. *Hughston v. McGee*, No. 23-CV-1898, 2023 WL 4141040, at \*2 (E.D. Pa. June 22, 2023) ("Violations of state law . . . do not on their own amount to a constitutional violation.") (citing *Whittaker v. Cnty. of Lawrence*, 437 F. App'x 105, 109 (3d Cir. 2011)). Thus, the Court will dismiss the *Monell* claims asserted in Counts IV and V of the Amended Complaint.

The Court notes that only the Smith Defendants moved to dismiss the *Monell* claims against them in their entirety. *See* ECF No. 24. However, the Court's reasoning similarly applies to the Mount Pleasant Defendants. Accordingly, the Court will dismiss all *Monell* claims made in the Amended Complaint. *Talley v. Clark*, 111 F.4th 255, 261 (3d Cir. 2024) (affirming a district court's dismissal of claims against moving and non-moving defendants alike where "the claims against all defendants [were] 'integrally related' [and] . . . the non-moving defendants [were] in a similar position to the moving defendants.") (citations omitted). The

claims against the Chiefs in their official capacity are dismissed with prejudice because they are substantively claims against the Townships, and amendments as to the Chiefs would therefore be futile. The claims against the Boards of Supervisors are dismissed without prejudice, with leave to amend to clarify the proper municipal defendant, i.e., each Township.

> **C.  Because More Specific Constitutional Provisions Govern, the State-Created Danger Claim (Count III) Must Be Dismissed**

Mr. Hoover, Sr. alleges a due process violation through a state-created danger claim under the Fourteenth Amendment against Officer Pasquale in his individual capacity. *See* ECF No. 16 at 14–15. In their Motion, the Smith Defendants contend that the state-created danger claim should be dismissed pursuant to the "more specific provision" rule. ECF No. 25 at 10–13. Under the more specific provision rule, "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth . . . Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *DeLade v. Cargan*, 972 F.3d 207, 210 (3d Cir. 2020) (quoting *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997)). The Third Circuit has expressly adopted this rule in cases involving Fourteenth Amendment substantive due process claims brought with claims of other constitutional violations that challenge the same conduct. *See Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 261 (3d Cir. 2010).

Here, because the more-specific unlawful deadly force claim under the Fourth Amendment applies to the same conduct, Mr. Hoover, Sr.'s state-created danger claim under the Fourteenth Amendment must be dismissed. The same incident and conduct form the basis of Mr. Hoover, Sr.'s Fourth Amendment claim (Count II) and Fourteenth Amendment claim (Count III) against Officer Pasquale. *See* ECF No. 16 at 11–14. Mr. Hoover, Sr. does not cite any case law for the proposition that he may bring both substantive due process and Fourth Amendment

claims challenging the same conduct.  In addition, Mr. Hoover, Sr.'s claims concern Officer Pasquale's alleged use of unlawful deadly force towards Mr. Hoover, Jr.  Because these allegations fit squarely within the Fourth Amendment's prohibition on a police officer's unreasonable use of deadly force, the Court concludes that the more specific provision rule forecloses Mr. Hoover, Sr.'s substantive due process claim.  *See Est. of Paone v. Twp. of Plymouth*, No. 25-1029, 2026 WL 661978, at *2 (3d Cir. Mar. 9, 2026) ("A police officer's use of deadly force violates the Fourth Amendment when it is not 'objectively reasonable.'") (quoting *Barnes v. Felix*, 605 U.S. 73, 76 (2025)).  Accordingly, the Court will dismiss Mr. Hoover, Sr.'s state-created danger claim in Count III.[6]  Because the Court concludes amendment of this claim would be futile, the state-created danger claim is denied with prejudice.  *O'Donnell v. Scranton Sch. Dist.*, No. 3:20-CV-225, 2024 WL 1197517, at *19 (M.D. Pa. Mar. 20, 2024) (dismissing a state-created danger claim with prejudice after concluding that leave to amend would be futile).

## IV.    Conclusion

For the foregoing reasons, the Mount Pleasant Defendants' Motion to Dismiss in Part is GRANTED, and the Smith Defendants' Motion to Dismiss is GRANTED in part and DENIED in part, as set forth fully in the accompanying Order.

DATED this 5th day of May, 2026.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

---

[6] In light of the applicability of the more specific provision rule, this Court need not analyze Mr. Hoover, Sr.'s arguments under the Fourteenth Amendment regarding the state-created danger doctrine.  *See Betts*, 621 F.3d at 261 n.10.

cc (via ECF email notification):

All Counsel of Record